UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------x

JULIA BASILE,

                Plaintiff,      07 Civ.    (   )

    -against-

WALTER SPAGNOLA, individually,
DONNY ESCHRICH, individually,
KEVIN DELOWE, individually,            **COMPLAINT**
RICHARD IUELE, individually,
RAMESH MEHTA, individually,
and NEW YORK STATE THRUWAY     **Jury Trial Demanded**
AUTHORITY,

                Defendants.
--------------------------------------------------------x

    Plaintiff JULIA BASILE, by her attorneys Lovett & Gould, LLP, for her complaint respectfully alleges:

### NATURE OF THE ACTION

1. This is an action for compensatory and punitive damages, proximately resulting from Defendants' conduct, engaged in while acting in concert and under color of New York State law, that violated Plaintiffs rights as guaranteed her by reason of 42 U.S.C. § 1985(2), 42 U.S.C. §1983 and Title VII, 42 U.S.C. §2000e *et . seq.*

### JURISDICTION

2. The Court's jurisdiction is invoked pursuant to 28 U.S.C. §§1331, 1343.

## THE PARTIES

3. Plaintiff JULIA BASILE, a thirty-four year old single mother, is a citizen of the United States, a domiciliary of the State of New York, and a resident of the County of Rockland. At all times relevant to this complaint she has been, and continues to be, employed by the New York State Thruway Authority (hereinafter "Authority") since April 2003 as the only female welder assigned to work on the Tappan Zee Bridge. In 2005 she filed a Title VII and 42 U.S.C. § 1983 civil rights action against the Authority, Defendant Spagnola and other Authority officials/employees by reason of a gender-based hostile work environment. Basile v. Spagnola, 05 Civ. 10699 (LMS)(hereinafter "Basile I"). As against Defendant Spagnola the case resulted in a jury verdict in the Spring of 2007 in the principal sum of $200,000 - - $50,000 of which was punitive damages.

4. Defendant WALTER SPAGNOLA (hereinafter "Spagnola"), who is sued in his individual and personal capacities only, at all times relevant to this complaint has for years been employed by the Authority as a "Supervising Bridge Painter" assigned to the Tappan Zee Bridge (hereinafter the "Bridge"). As such, and by reason of his seniority and political connections in the Authority, he *de facto* controls: i) the on-the-job conduct of many of the Authority employees assigned to the Bridge, including each of his individually named co-defendants; and ii) many of the workplace activities on the Bridge, including the circumstances referenced *infra*. Since Plaintiff's commencement of employment Spagnola has sexually abused her and *inter alia* stalked her in the workplace. Since the verdict in Basile I he has re-doubled his stalking activities with respect to Plaintiff - - all with the knowing consent and/or encouragement of his co-

defendants.

5. Defendant DONNY ESCHRICH (hereinafter "Eschrich"), who is sued in his individual and personal capacities only, at all times relevant to this complaint was employed by the Authority as a "Supervising Bridge Painter II", assigned to the Bridge. Eschrich, as a personal friend of Spanola and out of personal animus he harbors towards Plaintiff by reason of the jury verdict in Basile I and her testimony in the United States District Court during her trial, in or about August of 2007 entered in to a conspiratorial agreement (hereinafter the "conspiracy" or "plan") with Spagnola, DeLowe, Mehta and Iuele - - known to and approved by administrators of the Authority with final, discretionary decision making authority regarding the conduct set forth *infra* - - to kill and/or cause the death of Plaintiff following her return to work in August of 2007.

7. Defendant RICHARD IUELE (hereinafter "Iuele"), who is sued in his individual and personal capacities only, at all times relevant to this complaint was employed by the Authority as a "Bridge Maintenance Engineer", assigned to the Bridge. Iuele, also a friend of Spagnola who harbors the same animus towards Plaintiff, knowingly and intentionally agreed to participate in the conspiracy.

8. Defendant KEVIN DELOWE (hereinafter "DeLowe"), who is sued in his individual and personal capacities, at all times relevant to this complaint was employed by the Authority as a "Rigger" (whose function is *inter alia* to prepare scaffolding used in work assignments by amongst others the Plaintiff) assigned to the Bridge. DeLowe, another friend of Spanola who harbors the same animus towards Plaintiff, also knowingly and intentionally agreed to participate in the conspiracy.

9. Defendant RAMESH MEHTA (hereinafter "Mehta"), who is sued in his individual and personal capacities, at all times relevant to this complaint was employed by the Authority as the Director of the New York Region. He like his individually named co-defendants knowingly and intentionally agreed to participate in the conspiracy - - motivated by the same animus.

10. Defendant NEW YORK STATE THRUWAY AUTHORITY (hereinafter "Authority") is a public authority created by and existing pursuant to the laws of the State of New York. As such the Authority operates/maintains the Bridge. The Authority was a named Defendant in <u>Basile I</u> and monitored through its counsel the trial in that action. By reason of <u>Basile I</u> the Authority has intentionally encouraged and condoned the individually named Defendants conspiratorial plan to retaliate against Plaintiff by reason of her the verdict in that action and her testimony - - adverse to the Authority - - as given in the trial of that action.

## THE FACTS

11. In furtherance of Defendants' plan, and in connection with the first attempt by them to kill Plaintiff and/or cause her death, Defendants placed her welding truck in gear causing it to slowly roll forward on the Bridge while Plaintiff was suspended under the Bridge using a torch in connection with welding. But for the fortuitous intervention of Plaintiff's "helper", who stopped the truck and placed it in "park", the truck's motion would have severed the acetylene and oxygen lines that ran from the truck to Plaintiff's welding equipment under the Bridge causing a massive explosion and fireball with her certain resulting fatality - - along with extensive structural damage to the Bridge.

12. Thereafter Defendants ordered Plaintiff to perform work on a scaffolding that had been deliberately, defectively rigged (lacking "swing lows", "ties" and "clamps", leaving the scaffolding unsecured to the Bridge) with the objective of having Plaintiff plummet from the scaffolding approximately two hundred feet into the Hudson River. Fortuitously Plaintiff and her assigned co-worker noticed the defects and avoided certain serious injury or death by refusing to comply with Defendants' order. In that connection DeLowe subsequently expressly admitted to Plaintiff's co-worker that the defective rigging had been intentional and intended to injure the "bitch" and "break Julia's balls".

13. In a third attempt to kill and/or cause Plaintiff's death, Defendants punctured a high pressure air hose, a circumstance that was intended to cause the hose (under 1,500 pounds of pressure) to rupture when Plaintiff was using it while suspended under the Bridge. Fortuitously while Plaintiff's assigned co-worker instead began using the air hose below the surface of the Bridge Plaintiff, on the Bridge surface, saw the line begin to shred and shut off the compressor - - preventing a blast of pressurized air from blowing her co-worker off of the scaffolding and into the River, where he would have certainly been killed.

14. By way of multiple other attempts to sabotage Plaintiffs work environment and cause her serious bodily injury or death Defendants have:

    a. Repeatedly tampered with her welding truck, rendering it unsafe to operate,

  b. Repeatedly tampered with combustible fuel tanks, required to be used by her in connection with welding, with a view towards causing them to explode, and, *inter alia,*

  c. Repeatedly tampered with her air compressor with a view towards causing an explosion while Plaintiff was using it.

15. Most recently when Plaintiff's immediate supervisor confronted Eschrich regarding the multiple attempts on Plaintiff's life and requested his active intervention to prevent a tragedy, Eschrich responded: "She deserves whatever she gets".

16. With respect to the sabotage and attempts on her life Plaintiff has repeatedly reported these circumstances to the New York State Police, who have refused, out of deference to the well-established lawless behavior routinely engaged in by the Authority and its officials/employees, to investigate and/or take any proactive law enforcement action to protect her from the Defendants' criminal misconduct.

17. As a proximate result of Defendants' conduct Plaintiff has been caused to: endure for months, and continuing to date, relentless fear and terror; suffer extreme emotional upset; suffer extreme anxiety; suffer financial damages; endure public humiliation, public degradation, public embarrassment, public ridicule, public shame; suffer on-going retaliation because she successfully sued Spagnola for violations of her rights as guaranteed by 42 U.S.C. § 1983; suffer on-going retaliation by the Authority because in <u>Basile I</u> Plaintiff named the Authority as a defendant; suffer on-going death threats and related retaliatory conduct because she testified against Spagnola and the Authority in Federal Court during her trial; to suffer denials of her right to Equal Protection by reason of her gender; suffer daily stalking, harassing and threatening behavior purposefully and openly engaged in by Spanola on the Bridge; and she has otherwise

been rendered sick and sore.

## AS AND FOR A FIRST CLAIM
## AGAINST THE AUTHORITY

18. Repeats and realleges as if fully set forth the allegations of fact contained in paragraphs "1" to "17", inclusive.

17. Under the premises Defendant's retaliatory conduct violated Plaintiffs rights as guaranteed her by reason of Title VII, 42 U.S.C. §2000e *et. seq.*

## AS AND FOR A SECOND CLAIM
## AGAINST THE INDIVIDUALLY
## NAMED DEFENDANTS

18. Repeats and realleges as if fully set forth the allegations of fact contained in paragraphs "1" to "17", inclusive.

19. Under the premises Defendants' conduct violated Plaintiff's right to Equal Protection as guaranteed her by reason of the Fourteenth Amendment to the United States Constitution, 42 U.S.C. §1983.

## AS AND FOR A THIRD CLAIM
## AGAINST THE INDIVIDUALLY
## NAMED DEFENDANTS

20. Repeats and realleges as if fully set forth the allegations of fact contained in paragraphs "1" to "17", inclusive.

21.  Under the premises Defendants conspiracy and their acts taken in furtherance of it violated Plaintiff's rights as guaranteed by 42 U.S.C. § 1985(2).

## AS AND FOR A FOURTH CLAIM AGAINST THE INDIVIDUALLY NAMED DEFENDANTS

22. Repeats and realleges as if fully set forth the allegations of fact contained in paragraphs "1" to "17", inclusive.

23. Under the premises Defendants' retaliatory conduct violated Plaintiff's rights as guaranteed by the First Amendment to the United States Constitution, 42 U.S.C. § 1983.

WHEREFORE judgment is respectfully demanded:

    a. Awarding against the individually named Defendants such punitive damages as the jury may impose,

    b. Awarding as against all Defendants such compensatory damages as the jury may determine,

    c. Awarding against all Defendants costs and reasonable attorney's fees, and,

    d. Granting such other and further relief as to the Court seems just and proper.

Dated: White Plains, N.Y.
       December 14, 2007

LOVETT & GOULD, LLP
By:_____
Jonathan Lovett (4854)
Attorneys for Plaintiff
222 Bloomingdale Road
White Plains, N.Y. 10605
914-428-8401