No Summons Issued

ORIGINAL



UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------x
JULIA BASILE,

       Plaintiff,    07 Civ.11247 (CLB/LMS)

 -against-

WALTER SPAGNOLA, individually,  **FIRST AMENDED**
DONNY ESCHRICH, individually,   **COMPLAINT**
KEVIN DELOWE, individually,
RICHARD IUELE, individually,
RAMESH MEHTA, individually,
and NEW YORK STATE THRUWAY  **Jury Trial Demanded**
AUTHORITY,

       Defendants.
------------------------------------------------------x

  Plaintiff JULIA BASILE, by her attorneys Lovett & Gould, LLP, for her first amended complaint respectfully alleges:

## NATURE OF THE ACTION

  1. This is an action for compensatory and punitive damages, proximately resulting from Defendants' conduct engaged in while acting in concert and under color of New York State law, that violated Plaintiffs rights as guaranteed her by reason of 42 U.S.C. § 1985(2), 42 U.S.C. §1983, Title VII, 42 U.S.C. §2000e *et. seq.*, and Section 296 *et. seq* of the New York State Executive Law.

## JURISDICTION

  2. The Court's jurisdiction is invoked pursuant to 28 U.S.C. §§1331, 1343. On February 2, 2005, Plaintiff duly filed a Charge of Discrimination (#165200500490) premised upon gender with the United States Equal Employment Opportunity

Commission. A Notice of Right to Sue was thereafter issued by the United States Department of Justice on November 29, 2005. Since this action alleges retaliation by reason of Plaintiff's having previously filed an EEOC charge, received a Notice of Right to Sue, and prosecuted that the resulting Title VII claim against the New York State Thruway Authority, the filing of a second Charge of Discrimination and/or the receipt of a second Notice of Right to Sue is not required as a matter of law. Williams v. New York city Housing Authority, 458 F.3d 67, 70, ftn. 1 (2d Cir. 2006); Butts v. City of New York Department of Housing Preservation & Development, 990 F.2d 1397, 1401-3 (2d Cir. 1993). Plaintiff's supplemental state law claim is interposed pursuant to 28 U.S.C. §1367.

**THE PARTIES**

3. Plaintiff JULIA BASILE, a thirty-four year old single mother, is a citizen of the United States, a domiciliary of the State of New York, and a resident of the County of Rockland. At all times relevant to this complaint she has been employed by the New York State Thruway Authority (hereinafter "Authority") since April 2003 until recently as the only female welder assigned to work on the Tappan Zee Bridge. In 2005 she filed a Title VII and 42 U.S.C. § 1983 civil rights action against the Authority, Defendant Spagnola and other Authority officials/employees by reason of a gender-based hostile work environment. Basile v. Spagnola, 05 Civ. 10699 (LMS)(hereinafter "Basile I"). As against Defendant Spagnola the case resulted in a plaintiff's jury verdict in the Spring of 2007 in the principal sum of $200,000 - - $50,000 of which was punitive damages. In 2008 Plaintiff was forced by reason of her gender to relocate to a different work location within the Authority to avoid her being killed by co-workers as set forth *infra*.

4. Defendant WALTER SPAGNOLA (hereinafter "Spagnola"), who is sued in his individual and personal capacities only, at all times relevant to this complaint has for years been employed by the Authority as a "Supervising Bridge Painter" assigned to the Tappan Zee Bridge (hereinafter the "Bridge"). As such, and by reason of his seniority and political connections in the Authority, he *de facto* controls: i) the on-the-job conduct and/or misconduct of many of the Authority employees assigned to the Bridge, including each of his individually named co-defendants; and ii) many of the illegal and unauthorized workplace activities on the Bridge, including the circumstances referenced *infra*. Since Plaintiff's commencement of employment Spagnola has sexually abused her and *inter alia* stalked her in the workplace. Since the verdict in Basile I he has re-doubled his stalking activities with respect to Plaintiff - - all with the knowing consent and/or encouragement of his co-defendants. Spagnola's conduct as alleged herein has nothing whatsoever to do with his duties and/or responsibilities as an employee of the Authority; that conduct was in fact motivated by his personal stake in illegal conduct intended to cause Plaintiff's death because: i) as a female she not only refused to accede to his personal sexual entreaties, but openly opposed that illegal conduct; ii) she filed a Charge of Discrimination with the EEOC under Title VII because of Spagnola's gender discriminatory conduct as countenanced by the Authority; iii) she received a Notice of Right to Sue, and; iv) she successfully sued him for that unlawful conduct. Prior to Plaintiff's coerced relocation as set forth *supra* she repeatedly without success implored the Authority to transfer Spagnola from the Tappan Zee Bridge to a different work location in order to afford Plaintiff as safe work environment. The Authority refused to do so, by reason of Spagnola's gender, despite the jury verdict rendered in Basile I.

5. Defendant DONNY ESCHRICH (hereinafter "Eschrich"), who is sued in his individual and personal capacities only, at all times relevant to this complaint was employed by the Authority as a "Supervising Bridge Painter II", assigned to the Bridge. Eschrich, as a personal friend of Spanola and out of personal animus he harbors towards Plaintiff by reason of her gender, her opposition to Spagnola's sex-based discrimination in the workplace, her filing the said Charge of Discrimination with the EEOC, her receipt of a Notice of Right to Sue, and/or the jury verdict in Basile I, in or about August of 2007 entered in to a conspiratorial agreement (hereinafter the "conspiracy" or "plan") with Spagnola and co-defendants DeLowe, Mehta and Iuele - - known to and approved by administrators of the Authority with final, discretionary decision making authority regarding the conduct set forth *infra* - - to kill and/or cause the death of Plaintiff. Eschrich's conduct as alleged *infra* had nothing whatsoever to do with his duties and/or responsibilities as an employee of the Authority. In that connection Eschrich had a personal, not professional and/or corporate stake in causing Plaintiff's death.

7. Defendant RICHARD IUELE (hereinafter "Iuele"), who is sued in his individual and personal capacities only, at all times relevant to this complaint was employed by the Authority as a "Bridge Maintenance Engineer", assigned to the Bridge. Iuele, also a friend of Spagnola who harbors the same animus towards Plaintiff as set forth with respect to Spagnola and Eschrich, knowingly and intentionally agreed to participate in the conspiracy in which he had the same referenced personal stake in causing Plaintiff's death.

8. Defendant KEVIN DELOWE (hereinafter "DeLowe"), who is sued in his individual and personal capacities, at all times relevant to this complaint was employed

by the Authority as a "Rigger" (whose function is *inter alia* to prepare scaffolding used in work assignments by amongst others the Plaintiff) assigned to the Bridge. DeLowe, another friend of Spanola who harbors the same animus towards Plaintiff as set forth with respect to Spagnola, Eschrich and Iuele, also knowingly and intentionally agreed to participate in the conspiracy. He also had the same referenced personal stake in causing Plaintiff's death.

9. Defendant RAMESH MEHTA (hereinafter "Mehta"), who is sued in his individual and personal capacities, at all times relevant to this complaint was employed by the Authority as the Director of the New York Region. He like his individually named co-defendants knowingly and intentionally agreed to participate in the conspiracy - - motivated by the same animus referenced *supra* and the same personal stake in causing Plaintiff's death.

10. Defendant NEW YORK STATE THRUWAY AUTHORITY (hereinafter "Authority") is a public authority created by and existing pursuant to the laws of the State of New York. As such the Authority operates/maintains the Bridge. The Authority was a named Defendant in Basile I and monitored through its counsel the trial in that action. By reason of Basile I the Authority has intentionally encouraged and condoned the individually named Defendants conspiratorial plan to retaliate against Plaintiff by reason of her: i) opposition to Spagnola's sexual entreaties; ii) filing the Charge of Discrimination with the EEOC; iii) receiving the Notice of Right to Sue; iv) prosecution of a Title VII claim against the Authority; and v) obtaining the verdict in that action.

## THE FACTS

11. In furtherance of Defendants' plan, and in connection with the first attempt by them to kill Plaintiff and/or cause her death, Defendants placed her welding truck in gear causing it to slowly roll forward on the Bridge while Plaintiff was suspended under the Bridge using a torch in connection with welding. But for the fortuitous intervention of Plaintiff's "helper", who stopped the truck and placed it in "park", the truck's motion would have severed the acetylene and oxygen lines that ran from the truck to Plaintiff's welding equipment under the Bridge causing a massive explosion and fireball with her certain resulting fatality - - along with extensive structural damage to the Bridge and/or serious physical injuries or death to motorists on the Bridge.

12. Thereafter Defendants ordered Plaintiff to perform work on a scaffolding that had been deliberately, defectively rigged (lacking "swing lows", "ties" and "clamps", leaving the scaffolding unsecured to the Bridge) with the objective of having Plaintiff plummet from the scaffolding approximately two hundred feet into the Hudson River. Fortuitously Plaintiff and her assigned co-worker noticed the defects and avoided certain serious injury or death by refusing to comply with Defendants' order. In that connection DeLowe subsequently expressly admitted to Plaintiff's co-worker that the defective rigging had been intentional and was calculated to injure the "bitch" and "break Julia's balls".

13. In a third attempt to kill and/or cause Plaintiff's death, Defendants punctured a high pressure air hose, a circumstance that was intended to cause the hose (under 1,500 pounds of pressure) to rupture when Plaintiff was using it while suspended under the Bridge. Fortuitously while Plaintiff's assigned co-worker instead began using the air hose

below the surface of the Bridge Plaintiff, on the Bridge surface, saw the line begin to shred and shut off the compressor - - preventing a blast of pressurized air from blowing her co-worker off of the scaffolding and into the River, where he would have certainly been killed.

14. By way of multiple other retaliatory attempts to sabotage Plaintiffs work environment and cause her serious bodily injury or death Defendants have:

> a. Repeatedly tampered with her welding truck, rendering it unsafe to operate,
>
> b. Repeatedly tampered with combustible fuel tanks, required to be used by her in connection with welding, with a view towards causing them to explode, and, *inter alia,*
>
> c. Repeatedly tampered with her air compressor with a view towards causing an explosion while Plaintiff was using it.

15. Most recently when Plaintiff's immediate supervisor confronted Eschrich regarding the multiple attempts on Plaintiff's life and requested his active intervention to prevent a tragedy, Eschrich responded: "She deserves whatever she gets".

16. With respect to the sabotage and attempts on her life Plaintiff has repeatedly reported these circumstances to the New York State Police, who have refused out of deference to the well-established lawless behavior routinely engaged in by the Authority and its officials/employees, to investigate and/or take any proactive law enforcement action to protect her from the Defendants' criminal misconduct.

17. As a proximate result of Defendants' conduct Plaintiff has been caused to: endure for months, and continuing to date, relentless fear and terror; suffer extreme emotional upset; suffer

extreme anxiety; suffer financial damages; endure public humiliation, public degradation, public embarrassment, public ridicule, public shame; suffer on-going gender discriminatory violations of her right to Equal Protection because *inter alia* she successfully sued Spagnola for violations of her rights as guaranteed by 42 U.S.C. § 1983; suffer on-going retaliation by the Authority because in Basile I Plaintiff named the Authority as a defendant with respect to a Title VII claim; suffer on-going death threats and related retaliatory conduct because she testified against Spagnola and the Authority in Federal Court during her trial; to suffer denials of her right to Equal Protection by reason of her gender; suffer daily stalking, harassing and threatening behavior purposefully and openly engaged in by Spanola on the Bridge; suffer a chilling in her prospective exercise of her First Amendment rights to free speech and to petition government for the redress of grievances with respect to criminal wrongdoing engaged in by the Authority, routine on-the-job use of illicit drugs by Authority employees, routine on-the-job card playing and/or gambling by Authority employees, routine on-the-job sleeping by Authority employees, waste of public moneys by the Authority, theft of public property with impunity by employees of the Authority, and *inter alia* unsafe roadway and structural conditions on and under the Bridge that daily put motorists who use that Bridge at risk of serious injury or death ; and she has otherwise been rendered sick and sore.

### AS AND FOR A FIRST CLAIM
### AGAINST THE AUTHORITY

18. Repeats and realleges as if fully set forth the allegations of fact contained in paragraphs "1" to "17", inclusive.

17. Under the premises Defendant's retaliatory conduct violated Plaintiffs rights as guaranteed her by reason of Title VII, 42 U.S.C. §2000e *et. seq.*

### AS AND FOR A SECOND CLAIM
### AGAINST THE INDIVIDUALLY
### NAMED DEFENDANTS

18. Repeats and realleges as if fully set forth the allegations of fact contained in paragraphs "1" to "17", inclusive.

19. Under the premises Defendants' conduct violated Plaintiff's right to Equal Protection as guaranteed her by reason of the Fourteenth Amendment to the United States Constitution, 42 U.S.C. §1983.

### AS AND FOR A THIRD CLAIM
### AGAINST THE INDIVIDUALLY
### NAMED DEFENDANTS

20. Repeats and realleges as if fully set forth the allegations of fact contained in paragraphs "1" to "17", inclusive.

21. Under the premises Defendants conspiracy and their acts taken in furtherance of it violated Plaintiff's rights as guaranteed by 42 U.S.C. § 1985(2).

### AS AND FOR A FOURTH CLAIM
### AGAINST THE INDIVIDUALLY
### NAMED DEFENDANTS

22. Repeats and realleges as if fully set forth the allegations of fact contained in paragraphs "1" to "17", inclusive.

23. Under the premises Defendants' retaliatory conduct violated Plaintiff's rights as guaranteed by the First Amendment to the United States Constitution, 42 U.S.C. § 1983.

## AS AND FOR A FIFTH CLAIM
## AGAINST THE INDIVIDUALLY
## NAMED DEFENDANTS

24. Repeats and realleges as if fully set forth the allegations of fact contained in paragraphs "1" to "17", inclusive.

25. Under the premises Defendants violated Plaintiff's rights as guaranteed by Section 296 *et. seq* of the New York State Executive Law.

WHEREFORE judgment is respectfully demanded:

    a. Awarding on the Second, Third and Fourth Claims against the individually named Defendants such punitive damages as the jury may impose,

    b. Awarding on the First, Second, Third, Fourth and Fifth Claims as against all Defendants such compensatory damages as the jury may determine,

    c. Awarding on the First, Second, Third and Fourth claims against all Defendants costs and reasonable attorney's fees, and,

    d. Granting such other and further relief as to the Court seems just and proper.

Dated: White Plains, N.Y.
       February 20, 2008

LOVETT & GOULD, LLP
By:_____
Jonathan Lovett (4854)
Attorneys for Plaintiff
222 Bloomingdale Road
White Plains, N.Y. 10605
914-428-8401