UNITED STATES DISTRICT COURT                    Original Filed by ECF
SOUTHERN DISTRICT OF NEW YORK

JULIA BASILE,

                    Plaintiff,

    -against-

WALTER SPAGNOLA, individually,
DONNY ESCHRICH, individually,                   Docket Number 07-Civ.-11247
KEVIN DELOWE, individually,                     (CLB) (LMS)
RICHARD IUELE, individually,
RAMESH MEHTA, individually, and
NEW YORK STATE THRUWAY AUTHORITY,

                    Defendants.


# MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS
# FIRST AMENDED COMPLAINT


                              ANDREW M. CUOMO
                              Attorney General of the
                                State of New York
                              *Attorney for the Defendants*
                              120 Broadway
                              New York, New York 10271
                              (212) 416-8567


JOSHUA PEPPER
Assistant Attorney General
*Of Counsel*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

PRELIMINARY STATEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

FACTS AND PROCEDURAL HISTORY . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

I.     PLAINTIFF CANNOT MAINTAIN A TITLE VII ACTION IN THIS COURT
       AGAINST THE AUTHORITY . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

       A.     Plaintiff Has Not Exhausted Her Administrative Remedies . . . . . . . . . . . . . . 5

       B.     On the Merits, Plaintiff Has Not Alleged Retaliation by the Authority . . . . . . . . 8

II.    PLAINTIFF HAS NOT STATED A § 1983 CLAIM AGAINST THE INDIVIDUAL
       DEFENDANTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

       A.     Plaintiff Has Failed To Allege Facts That Would Support an Equal
              Protection Claim . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

       B.     Plaintiff Has Failed To Allege Facts That Would Support a First
              Amendment Retaliation Claim . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

       C.     Plaintiff Has Not Alleged That the Individual Defendants Acted
              Under Color of State Law . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

III.   PLAINTIFF HAS FAILED TO PLEAD SUFFICIENT FACTS TO STATE A
       CONSPIRACY CLAIM . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

IV.    DISMISSAL OF THE FIRST FOUR CLAIMS WARRANTS DISMISSAL OF
       PLAINTIFF'S STATE-LAW CLAIM FOR LACK OF SUBJECT-MATTER
       JURISDICTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

# TABLE OF AUTHORITIES

**Cases**                                                                    **Page**

*Alexander v. City of New York*,
    2004 WL 1907432 (S.D.N.Y. Aug. 25, 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Alfonso v. Costello*,
    294 F.3d 365 (2d Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Alungbe v. Board of Trustees of Conn. State Univ. Syst.*,
    283 F. Supp.2d 674 (D. Conn. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Amer. Manufacturers Mutual Insurance Co. v. Sullivan*,
    526 U.S. 40 (1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Angola v. Civiletti*,
    666 F.2d 1 (2d Cir. 1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Annett v. Univ. of Kansas*,
    371 F.3d 1233 (10th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Baldwin County Welcome Ctr. v. Brown*,
    466 U.S. 147 (1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 6

*Banisaied v. Clisham*,
    992 F. Supp. 128 (D. Conn. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Bell Atl. Corp. v. Twombly*,
    127 S. Ct. 1955 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Berk v. City of N.Y.*,
    2004 WL 1918701 (S.D.N.Y. Aug. 20, 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Bernheim v. Litt*,
    79 F.3d 318 (2d Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 12

*Bland v. State of New York*,
    263 F. Supp.2d 526 (E.D.N.Y. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Buck v. Bd. of Elections of City of N.Y.*,
    536 F.2d 522 (2d Cir. 1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Burlington Industries, Inc. v. Ellerth*,
    524 U.S. 742 (1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 9

*Cameron v. Church*,
    253 F. Supp.2d 611 (S.D.N.Y. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Carlos v. Santos*,
    123 F.3d 61 (2d Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Carrero v. N.Y.C. Housing Auth.*,
    975 F. Supp. 501 (S.D.N.Y. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Ciambriello v. County of Nassau*,
    292 F.3d 307 (2d Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Collins v. Christopher*,
    48 F. Supp.2d 397 (S.D.N.Y. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Colombo v. O'Connell*,
    310 F.3d 115 (2d Cir. 2002), *cert. denied,* 538 U.S. 961 (2003) . . . . . . . . . . . . . . . . . . . 15

*Connick v. Myers*,
    461 U.S. 138 (1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 13

*Cruz v. N.Y.C. Taxi and Limousine Committee*,
    2007 WL 4243861 (S.D.N.Y. Nov. 29, 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*DeFilippo v. N.Y.S. Unified Court Sys.*,
    2006 WL 842400 (E.D.N.Y. Mar. 27, 2006), *aff'd,* 223 Fed. Appx. 45
    (2d Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*De Los Santos v. City of New York*,
    482 F. Supp.2d 346 (S.D.N.Y. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*DiProjetto v. Morris Protective Service*,
    489 F. Supp.2d 305 (W.D.N.Y. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Ezekwo v. N.Y.C. Health & Hospitals Corp.*,
    940 F.2d 775 (2d Cir. 1991), *cert. denied,* 502 U.S. 1013 (1991) . . . . . . . . . . . 12, 13, 14

*Faragher v. City of Boca Raton*,
    524 U.S. 775 (1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Gonzaga Univ. v. Doe,*
    536 U.S. 273 (2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Hale v. Marsh,*
    808 F.2d 616 (7th Cir. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Hayden v. County of Nassau,*
    180 F.3d 42 (2d Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Henneberger v. Nassau,*
    465 F. Supp.2d 176 (E.D.N.Y. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Hermann v. Moore,*
    576 F.2d 453 (2d Cir. 1978), *cert. denied,* 439 U.S. 1003 (1978) . . . . . . . . . . . . . . . 18

*Hickey-McAllister v. British Airways,*
    978 F. Supp. 133 (E.D.N.Y. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Holtz v. Rockefeller & Co., Inc.,*
    258 F.3d 62 (2d Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Julian v. N.Y.C. Transit Auth.,*
    857 F. Supp. 242 (E.D.N.Y. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Kern v. City of Rochester,*
    93 F.3d 38 (2d Cir. 1996), *cert. denied,* 520 U.S. 1155 (1997) . . . . . . . . . . . . . . . 10, 15

*Kuriakose v. City of Mt. Vernon,*
    41 F. Supp.2d 460 (S.D.N.Y. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Lange v. Town of Monroe,*
    213 F. Supp.2d 411 (S.D.N.Y. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Lee v. Kroger Co.,*
    901 F. Supp. 1218 (S.D. Tex 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Lewis v. Cowen,*
    165 F.3d 154 (2d Cir. 1999), *cert. denied,* 528 U.S. 823 (1999) . . . . . . . . . . . . . . . . 13

*Luca v. Nassau,*
    2007 WL 1343670 (E.D.N.Y. May 8, 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Mack v. Otis Elevator Co.*,
    326 F.3d 116 (2d Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 9

*Malarkey v. Texaco, Inc.*,
    983 F.2d 1204 (2d Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Marshel v. Westchester County*,
    1999 WL 1256252 (S.D.N.Y. Dec. 27, 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Mass v. McClenahan*,
    893 F. Supp. 225 (S.D.N.Y. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Mathews v. Columbia Coll. Chicago*,
    435 F. Supp.2d 805 (N.D. Ill. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Meritor Savings Bank, FSB v. Vinson*,
    477 U.S. 57 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Miller v. Int'l Tel. and Teleg. Corp.*,
    755 F.2d 20 (2d Cir. 1985), *cert. denied,* 474 U.S. 851 (1985) . . . . . . . . . . . . . . . . . . 6, 7

*Nat'l R.R. Passenger Corp. v. Morgan*,
    536 U.S. 101 (2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Ostrer v. Aronwald*,
    567 F.2d 551 (2d Cir.1977) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Payne v. Meeks*,
    200 F. Supp.2d 200 (E.D.N.Y. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Pitchel v. Callan*,
    13 F.3d 545 (2d Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 16

*Polur v. Raffe*,
    912 F.3d 52 (2d Cir. 1990), *cert. denied,* 499 U.S. 937 (1991) . . . . . . . . . . . . . . . . . . . 16

*Reidinger v. D'Amicantino*,
    974 F. Supp. 322 (S.D.N.Y. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Rigby v. Coughlin*,
    730 F. Supp. 1196 (N.D.N.Y. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Rivera-Powell v. N.Y.C. Board of Elections*,
    470 F.3d 458 (2d Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Romer v. Morgenthau*,
    119 F. Supp.2d 346 (S.D.N.Y. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Rothman v. Gregor*,
    220 F.3d 81 (2d Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Ruotolo v. City of New York*,
    514 F.3d 184 (2d Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*San Filippo v. U.S. Trust Co. of New York, Inc.*,
    737 F.2d 246 (2d Cir. 1984), *cert. denied,* 470 U.S. 1035 (1985) . . . . . . . . . . . . . . . . . 18

*Saulpaugh v. Monroe Committee Hospital*,
    4 F.3d 134 (2d Cir. 1993), *cert. denied,* 510 U.S. 1164 (1994) . . . . . . . . . . . . . . . . . 14, 15

*Scalisi v. Fund Asset Mgt., L.P.*,
    380 F.3d 133 (2d Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Screws v. U.S.,*
    325 U.S. 91 (1945) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Sebold v. Middletown*,
    2007 WL 2782527 (D. Conn. Sept. 21, 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Settecase v. Port Authority of N.Y. and N.J.*,
    13 F. Supp.2d 530 (S.D.N.Y. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Sommer v. Dixon*,
    709 F.2d 173 (2d Cir. 1983) *cert. denied*, 464 U.S. 857 (1983) . . . . . . . . . . . . . . . . . . . 19

*Stewart v. INS*,
    762 F.2d 193 (2d Cir. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Thomas v. Roach*,
    165 F.3d 137 (2d Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Thorpe v. Luisi*,
    2005 WL 1863671 (S.D.N.Y. Aug. 4, 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

vi

*Tiltti v. Weise,*
     155 F.3d 596 (2d Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Valencia ex. rel. Franco v. Lee,*
     316 F.3d 299 (2d Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Webb v. Goord,*
     340 F.3d 105 (2d Cir. 2003), *cert. denied,* 540 U.S. 1110 (2004) . . . . . . . . . . . . . . . . . 17

*Worthington v. Suffolk,*
     2007 WL 2115038 (E.D.N.Y. July 20, 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

**Federal Statutes**

28 U.S.C. § 1367 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19
42 U.S.C. § 1983 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*
42 U.S.C. § 1985(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16
42 U.S.C. § 2000e-3(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

**Federal Rules**

FRCP 12(b)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
FRCP 12(b)(6) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

## PRELIMINARY STATEMENT

This Memorandum of Law is submitted on behalf of Defendants RICHARD IUELE ("Iuele"), DONNY ESCHRICH ("Eschrich"), KEVIN DLOUGHY ("Dloughy"), RAMESH MEHTA ("Mehta") (collectively the "Individual Defendants")[1] and NEW YORK STATE THRUWAY AUTHORITY (the "Authority") in support of their Motion To Dismiss the First Amended Complaint ("FAC") pursuant to Rule 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure ("FRCP"). The FAC has failed to cure any of Plaintiff's deficiencies.

Plaintiff cannot sustain her First Claim, a Title VII claim against the Authority, because she has failed to file a charge based on this claim with the EEOC, to receive a right-to-sue letter from the EEOC, or to file suit within 90 days of receiving such a letter, all of which are prerequisites to her Title VII claim. The simple allegation of "retaliation" does not allow her to circumvent the administrative process and commence a new federal action. To authorize such a practice would render the administrative process superfluous in derogation of Title VII. Moreover, Plaintiff's new allegation that the Individual Defendants acted completely separately from and outside the scope of their agency with the Authority precludes the possibility that her employer, the Authority, committed any acts of discrimination.

Plaintiff's federal claims against the Individual Defendants — violation of Equal Protection, First Amendment retaliation, and conspiracy — fare no better. *See* Second through Fourth Claims. As to the charge of violation of Equal Protection, Plaintiff has failed to allege that any of the Individual Defendants treated her differently on account of her sex. Regarding the

---

[1] The Attorney General does not represent Walter Spagnola ("Spagnola"), another individual defendant in this action. The term "Individual Defendants" will refer only to those individuals represented by the Attorney General.

charge of First Amendment retaliation, she has failed to allege that she engaged in any protected speech.  The only speech on which Plaintiff relies in support of her First Amendment retaliation claim is her previous lawsuit in 2005, which solely concerned her claims of sexual harassment. Because that lawsuit related only to Plaintiff's individual situation and not to some broader public purpose, the lawsuit does not constitute protected speech that would support a § 1983 claim.  Moreover, with her new allegation regarding the Individual Defendants' separation from the Authority, Plaintiff does not allege that the Individual Defendants acted under color of state law.

While Plaintiff presumably has relied on this new allegation in an attempt to avoid dismissal of the FAC under the intra-corporate conspiracy doctrine, her effort is unavailing. Plaintiff still has failed to allege anything beyond the legal conclusion of conspiracy.  She has alleged no facts that would support an inference of concerted action, no overt acts by any individuals in furtherance of the alleged conspiracy, and no details, such as the dates on which these acts allegedly occurred, that could allow Defendants to prepare their defense intelligently. Thus, Plaintiff has not pled the requisite facts to survive a motion to dismiss a conspiracy claim.

Finally, Plaintiff's latest claim set forth in her Fifth Claim pursuant to the New York State Human Rights Law cannot survive because this Court's subject-matter jurisdiction rests solely on the presence of the federal claims, all of which warrant dismissal.  The state-law claim should follow the same path.

## FACTS AND PROCEDURAL HISTORY

Plaintiff began working as a welder for the Authority in April 2003.  FAC ¶ 3.  At all times relevant to the Complaint, Plaintiff was working as a welder at the Tappan Zee Bridge.  *Id.*

In 2005, Plaintiff filed her first lawsuit (the "2005 Complaint," attached hereto as Exhibit A)[2] against the Authority, Spagnola, Eschrich, Iuele, and two other individuals. FAC ¶ 3. In the 2005 Complaint, Plaintiff alleged that Spagnola had subjected her to unwelcome sexual advances, daily observed her through binoculars, stared at her, expressed obscenities to her, telephoned her at her home, invited himself to her home for dinner, and invited her to his cabin. Ex. A, ¶ 10. In addition, Plaintiff claimed that she had complained about Spagnola's conduct to the other individual defendants but had not received an adequate response. Ex. A, ¶¶ 12-14.

On November 27, 2006, Plaintiff filed another lawsuit against the Authority, Iuele, Eschrich, and Mehta. Case No. 06-Civ.-13483, Docket Entry #1 (the "2006 Complaint"). The 2006 Complaint alleged retaliation in the form of having accused Plaintiff of various instances of wrongdoing on the job, including stealing Authority money, abandoning her job duties, wasting time, and several other accusations. *Id.* Plaintiff voluntarily withdrew the 2006 Complaint on January 8, 2007. Case No. 06-Civ.-13483, Docket Entry #11.

On April 12, 2007, Magistrate Judge Lisa M. Smith entered summary judgment[3] in favor of the Authority, Eschrich, Iuele, and two other Authority employees in the 2005 lawsuit. Case No. 05-cv-10699, Docket Entry # 54. Spagnola never moved for summary judgment, and Plaintiff ultimately obtained a verdict against Spagnola. FAC ¶ 3.

Plaintiff filed her original Complaint in this action on December 14, 2007 (the "2007

---

[2]The 2005 Complaint is attached here for the convenience of the Court. Plaintiff relied upon it in her Complaint in this action, and it is thus part of the Complaint. *Rothman v. Gregor,* 220 F.3d 81, 88 (2d Cir. 2000). Also, it is in the public record, and this Court can take judicial notice of its content. *Id.* at 92.

[3]The parties had consented to Magistrate Judge Smith's jurisdiction. Case No. 05-cv-10699, Docket Entry #21.

Complaint"). The 2007 Complaint asserted a Title VII cause of action against the Authority and three causes of action against the Individual Defendants. *Id.* Plaintiff now alleges that Defendants have attempted to murder her in retaliation for the unsuccessful lawsuit against them and the verdict against Spagnola. FAC ¶¶ 5, 10. More specifically, she claims that on an unspecified date, an unspecified Defendant placed her truck in gear, and it began slowly rolling forward. FAC ¶ 11. When the truck nearly ran over the acetylene and oxygen tubes that ran to Plaintiff's equipment, Plaintiff's co-worker discovered the problem, stopped the truck, and placed it in "park." *Id.* On another unidentified occasion, Plaintiff performed work on a scaffolding whose rigging Plaintiff alleged to be defective. FAC ¶ 12. On a third unidentified occasion, a hole blew out of the hose that connected an air compressor to Plaintiff's blowtorch. FAC ¶ 13. Plaintiff also alleges unspecified tampering by unspecified Defendants with her truck, her fuel tanks, and her air compressor. FAC ¶ 14.

On January 21, 2008, by mutual agreement, the Authority transferred Plaintiff from the Tappan Zee bridge to another position with the Authority. FAC ¶ 3.

On February 15, 2008, the Authority and the Individual Defendants moved to dismiss the 2007 Complaint. In response, Plaintiff filed the First Amended Complaint. The FAC added the allegation that Plaintiff had filed a charge of discrimination with the EEOC on February 2, 2005, and had received a right-to-sue letter on November 29, 2005, based on the allegations in the 2005 Complaint. FAC ¶ 2. The FAC also alleged that the conduct of all of the Individual Defendants "had nothing whatsoever to do with [their] duties and/or responsibilities as an employee of the Authority." FAC ¶ 5. *See also* FAC ¶¶ 7, 8, 9. The FAC also added a count of violation of the New York State Human Rights Law. FAC ¶ 25.

4

Plaintiff seeks only monetary damages and does not seek injunctive relief against the

Defendants.  FAC ¶ 25.

## ARGUMENT

## I.    PLAINTIFF CANNOT MAINTAIN A TITLE VII ACTION IN THIS COURT AGAINST THE AUTHORITY.

Plaintiff cannot maintain her Title VII claims against the Authority for two independent

reasons.  First, Plaintiff has not exhausted her administrative remedies with respect to the

allegations in the FAC.  Amending her complaint to allege reliance on a two-year-old right-to-sue

letter based on different allegations and pursuant to which she has already sued in federal court

does not cure this defect.  Second, by alleging that the Individual Defendants' actions had

"nothing whatsoever to do with their duties" with the Authority, Plaintiff has precluded any basis

of imputing their alleged murder attempts to the Authority.

### A.    Plaintiff Has Not Exhausted Her Administrative Remedies.

An individual must file a charge with the EEOC or an analogous state or local agency

within 180 or 300 days after the unlawful employment practice occurred.  *Nat'l R.R. Passenger

Corp. v. Morgan,* 536 U.S. 101, 109 (2002).  The term "practice" applies to a discrete single act

or occurrence "even when it has a connection to other acts."  *Id.* at 111.  Each discriminatory act

"starts a new clock for filing charges alleging that act."  *Id.* at 113.  Once an individual receives a

right-to-sue letter from the EEOC, he or she has 90 days to bring a civil action against the

respondent named in that charge.  *Baldwin County Welcome Ctr. v. Brown,* 466 U.S. 147, 149

(1984).  This administrative process is a precondition to suit.  *Holtz v. Rockefeller & Co., Inc.,*

258 F.3d 62, 83 (2d Cir. 2001).

This process is "not to be disregarded by courts out of a vague sympathy for particular litigants." *Baldwin County Welcome Ctr.,* 466 U.S. at 152.  These requirements, which are "to encourage settlement of discrimination disputes through conciliation and voluntary compliance, would be defeated if a complainant could litigate a claim not previously presented to and investigated by the EEOC." *Miller v. Int'l Tel. and Teleg. Corp.,* 755 F.2d 20, 26 (2d Cir. 1985), *cert. denied,* 474 U.S. 851 (1985).

Plaintiff has flouted this process.  Plaintiff has alleged new, discrete acts of discrimination.  Although Plaintiff supplies no dates for these alleged acts, she appears to have alleged that at least some of them occurred sometime after August 2007.  FAC ¶ 5.  This is months after the verdict against Spagnola, nearly a year after Judge Smith granted summary judgment in favor of the Authority and others, and nearly two years after Plaintiff received her right-to-sue letter from the EEOC regarding the acts of discrimination that she alleged in the 2005 Complaint.

Plaintiff filed her original complaint in this action on December 14, 2007.  Docket Entry #1.  This is nearly three years after she filed her EEOC charge regarding the allegations of the 2005 Complaint and over two years after having received a right-to-sue letter pertaining to those allegations.  Plaintiff does not allege, nor can she allege, that she ever filed a charge with the EEOC within 300 days after the incidents alleged in the FAC, that she received a right-to-sue letter pertaining to the incidents alleged in the FAC, or that she has filed the 2007 Complaint within 90 days of receiving a right-to-sue letter from the EEOC.

Plaintiff alleges that she can disregard the administrative process because the FAC alleges retaliation for having filed an EEOC charge alleging previous acts of discrimination.  FAC ¶ 2.

6

This Court need not assume the truth of this erroneous legal conclusion. *See Scalisi v. Fund Asset Mgt., L.P.,* 380 F.3d 133, 137 (2d Cir. 2004). A simple allegation of "retaliation" does not circumvent the exhaustion requirement. *See Alfonso v. Costello,* 294 F.3d 365, 382 (2d Cir. 2002) (holding that only "specific linkage between filing an EEOC charge and an act of retaliation" could meet exception to exhaustion requirement); *Malarkey v. Texaco, Inc.,* 983 F.2d 1204, 1209 (2d Cir. 1993) (expressly declining to hold that all claims of retaliation are reasonably related); *Alungbe v. Board of Trustees of Conn. State Univ. Syst.,* 283 F. Supp.2d 674, 682 (D. Conn. 2003) (holding that alleged retaliation could not be reasonably related to EEOC charge that had occurred three to four years earlier).

The exhaustion requirement is a notice provision. *Miller,* 755 F.2d at 26. Its purpose is to give the administrative agency the opportunity to investigate, mediate, and take remedial action. *Stewart v. INS,* 762 F.2d 193, 198 (2d Cir. 1985). In *Stewart,* where the plaintiff alleged retaliation to have occurred during the pendency of his lawsuit, the Second Circuit found that this purpose "would be defeated if we were to permit [the plaintiff] to by-pass exhaustion." *Id.* Similarly, in cases where litigants have brought a charge before the EEOC, sued their employers, and then subsequently alleged retaliation to have occurred after the first lawsuit had terminated, courts have required these litigants to pursue their allegations with the EEOC first before suing in federal court. *See, e.g., Annett v. Univ. of Kansas,* 371 F.3d 1233, 1238 (10th Cir. 2004); *Mathews v. Columbia Coll. Chicago,* 435 F. Supp.2d 805, 812 (N.D. Ill. 2006); *Lee v. Kroger Co.,* 901 F. Supp. 1218, 1224 (S.D. Tex 1995). The same result should follow here.

Plaintiff has already sued for damages pursuant to the allegations in the 2005 EEOC charge, and the court has entered final judgments in that action. Now, two years later, Plaintiff

7

seeks to use the same right-to-sue letter to file a second lawsuit with new allegations. Under

Plaintiff's theory, she could continue to file lawsuits alleging retaliation in perpetuity. This

would subvert the entire administrative process. Plaintiff must follow the administrative process,

not avoid it.

### B.    On the Merits, Plaintiff Has Not Alleged Retaliation by the Authority.

The anti-retaliation provision of Title VII, like the other anti-discrimination provisions,

outlaws discrimination by an employer. 42 U.S.C. § 2000e-3(a). It does not apply to retaliation

by someone other than the employee's employer. *Hale v. Marsh,* 808 F.2d 616, 619 (7th Cir.

1986) (affirming 12(b)(6) dismissal of allegation of retaliation by U.S. Army against OSHA

employee); *see also DiProjetto v. Morris Protective Service,* 489 F. Supp.2d 305, 309 (W.D.N.Y.

2007) (dismissing allegations of denial of access to property on the basis of national origin by

non-employer). Thus, Plaintiff can state a claim against the Authority only by alleging that the

Authority committed the enumerated acts of retaliation.

To sustain a Title VII claim against an employer, a plaintiff must allege a specific basis

for imputing the wrongful conduct to the employer. *Mack v. Otis Elevator Co.,* 326 F.3d 116,

122 (2d Cir. 2003). In making this determination, the court must look to principles of agency

law. *Burlington Industries, Inc. v. Ellerth,* 524 U.S. 742, 754 (1998). The plaintiff must allege

"'more than the employment relation itself' before the employer will be saddled with liability for

the employee's misbehavior." *Mack,* 326 F.3d at 124 (quoting *Ellerth,* 524 U.S. at 760).

Congress's decision to include an "agent" in the definition of "employer" "surely evinces an

intent to place some limits on the acts of employees for which employers under Title VII are to

be held responsible." *Meritor Savings Bank, FSB v. Vinson,* 477 U.S. 57, 72 (1986).

8

Liability can be attributed to the employer when the person committing the wrongful act "was aided in accomplishing the tort by the existence of the agency relation." *Ellerth,* 524 U.S. at 759. Where the alleged wrongdoer was the plaintiff's supervisor, the employer may be held liable for tortious conduct "made possible by abuse of his supervisory authority." *Faragher v. City of Boca Raton,* 524 U.S. 775, 802 (1998). This is because "the victim may well be reluctant to accept the risks of blowing the whistle on a superior" and because the supervisor's actions "necessarily draw upon his superior position." *Id.* at 803. In particular, where a supervisor sexually harasses a subordinate, that supervisor's authority "invests his or her harassing conduct with a particular threatening character, and in this sense, a supervisor is always aided by the agency relation." *Ellerth,* 524 U.S. at 763. It is "the use of economic power of the employer exercised by the employee to whom that power has been delegated that renders the employer liable." *Mack,* 326 F.3d at 124.

However, some acts bear no relation to one's supervisory status. Anyone "can break a co-worker's arm as easily as a supervisor, and anyone who has regular contact with an employee can inflict psychological injuries by his or her offensive conduct." *Ellerth,* 524 U.S. at 762.

Here, Plaintiff has alleged only that unspecified defendants committed various unspecified acts intended to kill Plaintiff. Plaintiff has not alleged that any particular individuals even committed the alleged acts, much less that the unspecified individuals were somehow aided by their positions with the Authority. Quite the contrary, Plaintiff has specifically alleged that the conduct of all of the individuals "had nothing whatsoever to do with his duties and/or responsibilities as an employee of the Authority." FAC ¶ 5. *See also* FAC ¶¶ 7-9.

The notion that any individual's actions could have had "nothing whatsoever" to do with

9

his employment position and that the individual could have been aided by that same position simply defies logic. One can more reasonably conclude that the particular wrongs alleged, such as putting a truck in gear or tampering with an airhose, are wrongs that anyone can commit, regardless of whether he or she works for the Authority or anyone else. Accordingly, agency principles dictate that the actions of the individuals who have apparently been accused of trying to kill Plaintiff cannot be imputed to the Authority.

## II.     PLAINTIFF HAS NOT STATED A § 1983 CLAIM AGAINST THE INDIVIDUAL DEFENDANTS.

Plaintiff's Second and Fourth Counts assert claims against the Individual Defendants for allegedly violating her rights to Equal Protection and Freedom of Speech, respectively. FAC ¶¶ 19, 23. To state a claim for relief under 42 U.S.C. § 1983, a plaintiff must allege that the defendant violated his constitutional or federal rights and that he did so under color of state law. *Kern v. City of Rochester,* 93 F.3d 38, 43 (2d Cir. 1996), *cert. denied,* 520 U.S. 1155 (1997). Plaintiff has alleged neither. She has failed to alleged any facts that would demonstrate disparate treatment under the Equal Protection Clause, nor has she alleged that she exercised any protected speech of public concern that would implicate the First Amendment. Also, by alleging that the Individual Defendants acted independently from their duties with the Authority, Plaintiff has made clear that she is not alleging that the Individual Defendants acted under color of state law.

### A.     Plaintiff Has Failed To Allege Facts That Would Support an Equal Protection Claim.

Plaintiff asserts in her Second Count that the Individual Defendants violated her right to Equal Protection under the Fourteenth Amendment. FAC ¶ 19. Plaintiff asserts no facts in support of this claim; she alleges merely that the Individual Defendants caused her "to suffer

10

[unspecified] denials of her right to Equal Protection by reason of her gender." FAC ¶ 17. This does not state an Equal Protection claim under § 1983.

To survive a motion to dismiss, a plaintiff must allege "enough facts to state a claim for relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 127 S.Ct. 1955, 1974 (2007). The complaint must have "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 1965. To state an Equal Protection claim, a plaintiff must allege that the defendant has intentionally "distinguishe[d] between individuals based on 'unreasonable, arbitrary, or capricious differences that are irrelevant to a legitimate government objective,'" *Bernheim v. Litt,* 79 F.3d 318, 323 (2d Cir. 1996) (internal citations omitted); *see also Hayden v. County of Nassau,* 180 F.3d 42, 48 (2d Cir. 1999), *overruled on other grounds by Gonzaga Univ. v. Doe,* 536 U.S. 273 (2002).

Nowhere in the Complaint has Plaintiff alleged any purposeful discriminatory conduct based on her sex, much less that any of the Individual Defendants subjected Plaintiff to different treatment based on her sex. Plaintiff's Equal Protection claim is confined to her lone statement in paragraph 17 regarding her unspecified denials of Equal Protection based on her sex. This manner of conclusory pleading does not state a § 1983 Equal Protection claim. *See Rivera-Powell v. N.Y.C. Board of Elections,* 470 F.3d 458, 470 (2d Cir. 2006) (holding that conclusory allegation of racial discrimination in disqualifying candidate for public office did not state Equal Protection claim); *Cruz v. N.Y.C. Taxi and Limousine Comm.,* 2007 WL 4243861, at *3 (S.D.N.Y. Nov. 29, 2007) (holding that conclusory allegation that TLC had refused assistance because he was Hispanic did not state Equal Protection claim).

Nor does Plaintiff state a claim under § 1983 by alleging retaliation for a previous

11

lawsuit.  Although these facts, asserted against an employer, may support a retaliation claim

under Title VII, no right exists under the Equal Protection Clause to duplicate this claim.

*Bernheim,* 79 F.3d at 323 (in affirming 12(b)(6) dismissal of putative § 1983 retaliation claim

styled as an Equal Protection claim, the Second Circuit declared that "we know of no court that

has recognized a claim under the equal protection clause for retaliation following complaints of

[] discrimination").  Plaintiff cannot use § 1983 as a vehicle to assert a putative Title VII

retaliation claim.  *See also Lange v. Town of Monroe,* 213 F. Supp.2d 411, 419 (S.D.N.Y. 2002);

*Worthington v. Suffolk,* 2007 WL 2115038, at *2 (E.D.N.Y. July 20, 2007); *Luca v. Nassau,*

2007 WL 1343670, at *5 (E.D.N.Y. May 8, 2007).  Notably, to do so would allow a plaintiff to

bypass Title VII's administrative exhaustion requirement and circumvent Title VII's limits on

damages.  Plaintiff cannot do so, and this claim warrants dismissal.

### B.    Plaintiff Has Failed To Allege Facts That Would Support a First Amendment Retaliation Claim.

In her Fourth Cause of Action, Plaintiff asserts that the Individual Defendants retaliated

against her in violation of the First Amendment.  FAC ¶ 23.  She alleges that the Individual

Defendants have attempted to kill or injure Plaintiff for having filed suit for sexual harassment

against the Authority and for having obtained a verdict adverse to Spagnola.  FAC ¶¶ 3-5, 10-14,

17.  These allegations do not support a claim under § 1983.

A First Amendment retaliation claim has two elements: (1) protected speech, and (2) an

adverse employment action as a result of that protected speech.  *Ezekwo v. N.Y.C. Health &*

*Hosps. Corp.,* 940 F.2d 775, 780 (2d Cir. 1991), *cert. denied,* 502 U.S. 1013 (1991).  To qualify

as protected speech under the first element, a public employee's speech must be a matter of

public concern, and not a matter solely of personal interest.  *Connick v. Myers,* 461 U.S. 138, 147

(1983). Whether the speech addresses a matter of public concern depends on the content, form, and context of the given statement. *Id.* at 147-48. The inquiry into the speech's protected status is one of law, not fact. *Id.* at 148 n.7.

In making that determination, the "heart of the matter is whether the employee's speech was 'calculated to redress personal grievances or whether it had a broader public purpose.'" *Ruotolo v. City of New York,* 514 F.3d 184, 189 (2d Cir. 2008) (quoting *Lewis v. Cowen,* 165 F.3d 154, 163-64 (2d Cir. 1999), *cert. denied,* 528 U.S. 823 (1999)). Matters purely of personal interest or to redress personal grievances will not qualify as public concerns. *Tiltti v. Weise,* 155 F.3d 596, 602 (2d Cir. 1998); *De Los Santos v. City of New York,* 482 F. Supp.2d 346, 353 (S.D.N.Y. 2007). When an employee "is 'not on a mission to protect the public welfare' but hopes merely to prosecute his own grievances, he has failed to implicate the public concern." *Thorpe v. Luisi,* 2005 WL 1863671, at *6 (S.D.N.Y. Aug. 4, 2005) (quoting *Ezekwo,* 940 F.2d at 781).

Where the speech at issue is a lawsuit, the content of the suit determines whether the First Amendment applies. *Ruotolo,* 514 F.3d at 186. In *Ruotolo,* a retired police officer alleged acts of retaliation for having filed a lawsuit against the police department for earlier retaliation for having made a report about possible environmental hazards. *Id.* at 186-87. In affirming the Rule 12(b)(6) dismissal, the Second Circuit held that because the first lawsuit had sought to redress personal grievances, it did not seek to advance a public purpose. *Id.* at 189.

Here, the speech in question is Plaintiff's 2005 lawsuit against Spagnola and others. Just as the plaintiff in *Ruotolo* had sought to redress personal grievances in his first action, Plaintiff in this action has similarly sought solely to redress personal grievances by her 2005 action.

Plaintiff's 2005 Complaint alleged that Spagnola had subjected her to unwelcome sexual advances, observed her through binoculars, stared at her, telephoned her at her home, and invited himself to her home.  Ex. A, ¶ 10.  Plaintiff further alleged that when she had rebuffed Spagnola, Spagnola retaliated against her with negative performance evaluations and that supervisors had not properly addressed the issue.  Ex. A, ¶¶ 11-14.  These allegations relate solely to Plaintiff.  Consequently, the 2005 Complaint does not qualify as protected speech.  *See also Payne v. Meeks,* 200 F. Supp.2d 200, 206 (E.D.N.Y. 2002) (holding that lawsuit for sexual assault did not implicate public concern); *Carrero v. N.Y.C. Housing Auth.,* 975 F. Supp. 501, 510 (S.D.N.Y. 1997) (holding that lawsuit for sexual harassment did not implicate public concern).

In other cases where complaints of sexual harassment concern only the plaintiff, courts have repeatedly held that retaliation for such complaints raised only a private concern and thus was not actionable under § 1983.  *See, e.g., Saulpaugh v. Monroe Comm. Hosp.,* 4 F.3d 134, 143 (2d Cir. 1993), *cert. denied,* 510 U.S. 1164 (1994); *Bland v. State of New York,* 263 F. Supp.2d 526, 545 (E.D.N.Y. 2003); *Collins v. Christopher,* 48 F. Supp.2d 397, 409 (S.D.N.Y. 1999); *Settecase v. Port Auth. of N.Y. and N.J.,* 13 F. Supp.2d 530, 536 (S.D.N.Y. 1998); *Carrero,* 975 F. Supp. at 510;  *Reidinger v. D'Amicantino,* 974 F. Supp. 322, 330 (S.D.N.Y. 1997); *Sebold v. Middletown,* 2007 WL 2782527, at *28 (D. Conn. Sept. 21, 2007); *DeFilippo v. N.Y.S. Unified Court Sys.,* 2006 WL 842400, at *15 (E.D.N.Y. Mar. 27, 2006), *aff'd,* 223 Fed. Appx. 45 (2d Cir. 2007); *Alexander v. City of New York,* 2004 WL 1907432, at *13 (S.D.N.Y. Aug. 25, 2004).  Here, the allegations of sexual harassment in Plaintiff's 2005 Complaint pertain exclusively to herself.  All of the allegations in the 2005 Complaint are "personal in nature and generally related to her own situation."  *Ezekwo,* 940 F.2d at 781.

14

Nowhere in the 2005 Complaint does Plaintiff allege that she is attempting to address a broader public purpose, such as "to debate issues of sex discrimination" or to be "part of an overall effort to correct allegedly unlawful practices or bring them to public attention." *Saulpaugh,* 4 F.3d at 143. The 2005 Complaint focuses entirely on Plaintiff's own personal situation. As such, it does not raise First Amendment concerns. Accordingly, any alleged retaliation against Plaintiff for her 2005 sexual-harassment complaint fails to state a § 1983 claim and requires dismissal.

### C.    Plaintiff Has Not Alleged That the Individual Defendants Acted Under Color of State Law.

A state official acts under color of state law when that official exercises a power he possesses by virtue of state law and made possible only because he is cloaked with the authority of law. *Colombo v. O'Connell,* 310 F.3d 115, 117-18 (2d Cir. 2002), *cert. denied,* 538 U.S. 961 (2003). The official acting under color of law "abuses the position given to him by the State." *Kern,* 93 F.3d at 43. The officer's behavior must have an actual or purported relationship with his duties. *Banisaied v. Clisham,* 992 F. Supp. 128, 130 (D. Conn. 1998).

On the other hand, public officers' acts "in the ambit of their personal pursuits are plainly excluded." *Pitchel v. Callan,* 13 F.3d 545, 548 (2d Cir. 1994) (citing *Screws v. U.S.,* 325 U.S. 91 (1945)). Section 1983 excludes private conduct, "no matter how discriminatory or wrongful." *Amer. Manufacturers Mut. Ins. Co. v. Sullivan,* 526 U.S. 40, 50 (1999). Private violence, even violence committed by a state officer, "has different legal ramifications than violence attributable to state action." *Banisaied,* 992 F. Supp. at 131.

Here, Plaintiff has explicitly alleged that the conduct of the Individual Defendants "had nothing whatsoever to do with [their] duties and/or responsibilities as an employee of the

15

Authority."  FAC ¶ 5.  *See also* FAC ¶¶ 7-9.  One simply cannot square this allegation with the notion that the Individual Defendants acted with powers they possessed only by virtue of their position with the Authority or that they abused their position with the Authority.  Plaintiff has explicitly alleged that the Individual Defendants acted in the ambit of their personal pursuits and that their alleged behavior had no actual or purported relationship with their duties.

Plaintiff has also failed to allege any contrary facts from which one can infer that the Individual Defendants committed any wrongs under color of state law.  An official does not act under color of law where any citizen may perform that act.  *Carlos v. Santos,* 123 F.3d 61, 65 (2d Cir. 1997).  State authority could not have enabled the Individual Defendants to tamper with Plaintiff's air hose, tamper with Plaintiff's truck, or otherwise try to kill or injure Plaintiff.  Any citizen may perform such acts.  This action is akin to *Pitchell,* in which an off-duty police officer shot a guest in his home.  13 F.3d at 548.  Just as the police officer in *Pitchell* had not acted with the actual or pretended authority of the state, the Individual Defendants have not acted with such actual or pretended authority.  Consequently, they have not acted under color of state law.  Plaintiff cannot sustain her Second and Fourth Claims.

## III.  PLAINTIFF HAS FAILED TO PLEAD SUFFICIENT FACTS TO STATE A CONSPIRACY CLAIM.

In her Third Count, Plaintiff asserts a conspiracy among the Individual Defendants to violate Plaintiff's civil rights under 42 U.S.C. § 1985(2).  This count cannot stand because Plaintiff has not alleged facts that would support a claim of conspiracy.

Vague, conclusory allegations of a conspiracy cannot survive a motion to dismiss.  *Polur v. Raffe,* 912 F.3d 52, 56 (2d Cir. 1990), *cert. denied,* 499 U.S. 937 (1991).  A detailed fact pleading is necessary because a conspiracy claim, in particular, is the kind of claim that is "so

16

easily made and can precipitate such protracted proceedings with such disruption of

governmental functions." *Angola v. Civiletti,* 666 F.2d 1, 4 (2d Cir. 1981).  Thus, the complaint

must include "sufficient facts to establish the required elements, not merely vague and

conclusory statements that track the statutory language." *Kuriakose v. City of Mt. Vernon,* 41 F.

Supp.2d 460, 465 (S.D.N.Y. 1999) (Parker, J.), *app. dismissed,* 22 Fed. Appx. 44 (2d. Cir. Oct.

23, 2001).  Plaintiff must allege facts leading to a reasonable inference of a conspiracy to deprive

her of a recognized constitutional right.  *Romer v. Morgenthau,* 119 F. Supp.2d 346, 364

(S.D.N.Y. 2000).

To survive a motion to dismiss, a plaintiff must allege specific facts supporting a meeting

of the minds to achieve the unlawful end.  *Webb v. Goord,* 340 F.3d 105, 110-111 (2d Cir. 2003),

*cert. denied,* 540 U.S. 1110 (2004); *Julian v. N.Y.C. Transit Auth.,* 857 F. Supp. 242, 252

(E.D.N.Y. 1994).  The complaint must allege facts that would demonstrate concerted action.

*Hickey-McAllister v. British Airways,* 978 F. Supp. 133, 140 (E.D.N.Y. 1997).  A simple

allegation that a defendant acted "in furtherance of the conspiracy" is insufficient.  *Id.* at 139.

Nor can a plaintiff rest on the allegation that defendants "conspired together" or "knowingly

acted in collusion."  *Rigby v. Coughlin,* 730 F. Supp. 1196, 1200 (N.D.N.Y. 1990).  Rather,

Plaintiff must allege "with at least some degree of particularity, overt acts which defendants

engaged in which were reasonably related to the promotion of the claimed conspiracy."  *Thomas

v. Roach,* 165 F.3d 137, 147 (2d Cir. 1999).  Plaintiff must provide specific instances of

misconduct, including time and place, which specify in detail the factual basis necessary to

enable defendants to prepare their defense intelligently.  *Ciambriello v. County of Nassau,* 292

F.3d 307, 325 (2d Cir. 2002); *Ostrer v. Aronwald,* 567 F.2d 551, 553 (2d Cir.1977).

17

Plaintiff has not met this pleading standard. She has alleged only that the Individual Defendants "entered into a conspiratorial agreement . . . to kill and/or cause the death of Plaintiff." FAC ¶ 5. Plaintiff has not alleged any particularized facts that would demonstrate concerted action, nor has she alleged any facts that would demonstrate an agreement of any kind. To the extent that Plaintiff alleges that the Individual Defendants acted while on the job or with the approval or encouragement of the Authority, the Individual Defendants all acted as agents of the Authority, and thus the intra-corporate conspiracy would bar her claim because a corporate entity cannot conspire with itself. *Hermann v. Moore,* 576 F.2d 453, 459 (2d Cir. 1978), *cert. denied,* 439 U.S. 1003 (1978); *Henneberger v. Nassau,* 465 F. Supp.2d 176, 196 (E.D.N.Y. 2006) (holding that employees of county could not conspire to discriminate against plaintiff on basis of age); *Cameron v. Church,* 253 F. Supp.2d 611, 623 (S.D.N.Y. 2003) (holding that agents of county could not conspire to force plaintiff's resignation). Even assuming, as Plaintiff conclusorily alleges, that the Individual Defendants committed wrongful acts outside the scope of their agency with the Authority, Plaintiff still has not alleged any facts that would establish that any of the Individual Defendants participated in a conspiracy.

A conspiracy claim cannot survive without "specific factual allegations as to the participation of a *particular defendant* in the conspiracy." *Mass v. McClenahan,* 893 F. Supp. 225, 231 (S.D.N.Y. 1995) (emphasis added). *See also San Filippo v. U.S. Trust Co. of New York, Inc.,* 737 F.2d 246, 256 (2d Cir. 1984) (holding that allegation of "routine and necessary" meeting with defendants did not state conspiracy claim), *cert. denied,* 470 U.S. 1035 (1985); *Buck v. Bd. of Elections of City of N.Y.,* 536 F.2d 522, 525 (2d Cir. 1976) (affirming 12(b)(6) dismissal where no factual allegation tied any particular defendant to conspiracy); *Berk v. City of*

18

*N.Y.,* 2004 WL 1918701, at *7 (S.D.N.Y. Aug. 20, 2004) (dismissing conspiracy claim where complaint had not alleged with particularity overt acts by particular defendants).  Plaintiff has not made a single allegation of an overt act by any individual.  She repeatedly alleges that unspecified "Defendants" committed various vague wrongful acts on unspecified dates in unspecified places.  *See* FAC ¶¶ 11-14.  This does not tie any particular Individual Defendant to any alleged conspiracy.  Nor do such vague allegations specify in detail the factual basis necessary to enable the Individual Defendants to prepare their defense intelligently.  Simply accusing "Defendants" of bad acts does not establish a conspiracy.  *See Sommer v. Dixon,* 709 F.2d 173, 175 (2d Cir. 1983) (affirming 12(b)(6) dismissal against prison officials where plaintiff did not know which officials had seized his property), *cert. denied,* 464 U.S. 857 (1983); *Marshel v. Westchester County,* 1999 WL 1256252, at *5 (S.D.N.Y. Dec. 27, 1999) (dismissing conspiracy claim where prison guards had beaten prisoner and caused serious injuries).  These vague, conclusory allegations cannot survive a motion to dismiss.

## IV.    DISMISSAL OF THE FIRST FOUR CLAIMS WARRANTS DISMISSAL OF PLAINTIFF'S STATE-LAW CLAIM FOR LACK OF SUBJECT-MATTER JURISDICTION.

As shown *supra,* Plaintiff cannot maintain any of her first four claims.  The sole remaining claim is her claim against the Individual Defendants under the New York State Human Rights Law.  This Court has jurisdiction over this claim only by virtue of its supplemental jurisdiction under 28 U.S.C. § 1367.  This Court has the discretion to dismiss the remaining state-law claim when no federal claims remain.  *Valencia ex. rel. Franco v. Lee,* 316 F.3d 299, 305 (2d Cir. 2003).  At this early stage, the interests of judicial economy warrant doing so.[4]

---

[4]This Court may also dismiss this claim on the ground that Plaintiff has not asserted a claim for discrimination against her employer.  *See* Section I.B, *supra.*

## CONCLUSION

The First Amended Complaint fails to cure the deficiencies of the 2007 Complaint and adds a new deficiency.  Plaintiff still has not exhausted her administrative remedies under Title VII, nor has she alleged any facts that would demonstrate different treatment on account of her sex, speech regarding a public concern, or concerted action by each Individual Defendant to achieve an unlawful end.  Moreover, her new allegation directly contravenes the notion that the Individual Defendants could have acted as agents of the Authority.  In short, Plaintiff has failed to state any claim that this Court can entertain.  This Court should dismiss this case.

Dated:  New York, New York
        March 17, 2008

Respectfully submitted,

ANDREW M. CUOMO
Attorney General of the State of New York
*Attorney for Defendants Richard Iuele, Donny Eschrich, Kevin Dloughy, Ramesh Mehta, and New York State Thruway Authority*

By:    /s/ Joshua Pepper
       JOSHUA PEPPER
       Assistant Attorney General
       120 Broadway, 24th floor
       New York, NY 10271
       tel: 1-212-416-8567
       fax: 1-212-416-6075

JOSHUA PEPPER
Assistant Attorney General
  *Of Counsel*

20

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x

JULIA BASILE,

                              Plaintiff,                    05 Civ.

        -against-

WALTER SPAGNOLA, individually,
FRANCES ROSALES, individually,
DONNY ESCHRICH, individually,
ANDREW SCARPULLA, individually,
RICHARD IUELE, individually, and
The NEW YORK STATE THRUWAY
AUTHORITY,

                              Defendants.

-------------------------------------------------------------x



**COMPLAINT**

'05 CIV 10699

**Jury Trial Demanded**



JUDGE McMahon

        Plaintiff JULIA BASILE, by her attorneys Lovett & Gould, LLP, for her

complaint respectfully alleges:


                    **NATURE OF THE ACTION**

        1. This is an action for compensatory and punitive damages, proximately resulting

from Defendants' conduct, engaged in while acting in concert and under color of New

York State law, that violated Plaintiff's rights as guaranteed her by reason of Title VII

(gender, retaliation), the Fourteenth Amendment to the United States Constitution (Equal

Protection), and Sections 296 *et. seq.* of the New York State Human Rights Law.

## JURISDICTION

2. The Court's jurisdiction on the federal claims is invoked pursuant to 28 U.S.C. §§1331, 1343. Plaintiff's state law claim is interposed in accordance with the Court's supplemental jurisdiction, 28 U.S.C. §1367. On February 2, 2005, Plaintiff duly filed a Charge of Discrimination (#165200500490) premised upon gender with the United States Equal Employment Opportunity Commission. A Notice of Right to Sue was thereafter issued by the United States Department of Justice on November 29, 2005.

## THE PARTIES

3. Plaintiff JULIA BASILE, a thirty-four year old single mother of two, is a citizen of the United States, a domiciliary of the State of New York, and a resident of the County of Rockland. At all times relevant to this complaint she has been employed by the New York State Thruway Authority (hereinafter "Authority") since April 2003 as the only female welder assigned to work on the Tappan Zee Bridge.

4. Defendant WALTER SPAGNOLA (hereinafter "Spagnola"), who is sued in his individual and personal capacities only, at all times relevant to this complaint was employed by the Authority as a Supervising Bridge Painter I assigned to the Tappan Zee Bridge. Spagnola is in his mid fifties and is married. During the period of times referenced *infra*, except as otherwise expressly indicated, Spagnola was Plaintiff's immediate supervisor despite the circumstance that he had no certifications whatsoever with respect to welding.

5. Defendant FRANCES ROSALES (hereinafter "Rosales"), who is sued in her individual and personal capacities only, at all times relevant to this complaint was

employed by the said Authority as the Manager of Equal Opportunity. As such she is one of several Authority officials empowered with final discretionary decision-making authority to: determine in-house charges of discrimination premised upon gender; impose prompt remedial action with respect to such discrimination; and require any Authority employee/official who has violated the laws prohibiting gender discrimination in the workplace from ceasing any such violation.

6. Defendant DONNY ESCHRICH (hereinafter "Eschrich"), who is sued in his individual and personal capacities only, at all times relevant to this complaint was employed by the Authority as a Supervising Bridge Painter II, assigned to the Tappan Zee Bridge.

7. Defendant ANDREW SCARPULLA (hereinafter "Scarpulla"), who is sued in his individual and personal capacities only, at all times relevant to this complaint was employed by the Authority as a Bridge Maintenance Supervisor III, assigned to the Tappan Zee Bridge.

8. Defendant RICHARD IUELE (hereinafter "Iuele"), who is sued in his individual and personal capacities only, at all times relevant to this complaint was employed by the Authority as a Bridge Maintenance Engineer, assigned to the Tappan Zee Bridge.

9. Defendant NEW YORK STATE THRUWAY AUTHORITY (hereinafter "Authority") is a public authority created by and existing pursuant to the laws of the State of New York. As such the Authority operates/maintains the Tappan Zee Bridge.

## THE FACTS

10. Commencing within months of Plaintiff's being hired by the Authority, Spagnola embarked upon an open and notorious campaign of sexual harassment of Plaintiff by, *inter alia*:

    a. Repeatedly placing his hand on her thigh,

    b. Regularly hugging her,

    c. Routinely putting his arm around her,

    d. Daily observing her through binoculars, for extended periods of time, while Plaintiff was suspended under the Tappan Zee Bridge performing welding repairs - - conduct which Spagnola described to co-workers as Plaintiff "sunbathing",

    e. Expressing himself to her in terms of obscenities,

    f. Stalking her and staring at her,

    g. Telephoning her at home, after work hours, to advise that he wanted to "eat her like a sandwich",

    h. Inviting her to spend time with him at his "cabin" with the intent to engage in sexual relations,

    i. Inviting himself to Plaintiff's home for dinner with the intent of engaging in sexual relations,

    j. Making obscene gestures to her,

    k. Forcibly grabbing her and attempting to stick his tongue down her throat,

    l. Repeatedly standing within inches of her in a physically

threatening manner, while verbally degrading her in front of co-workers, and,

  m.  Cautioning her that if she did not accede to his sexual advances he would have her fired.

11. Plaintiff repeatedly and forcefully rejected Spagnola's sexually oriented conduct, both verbally and physically, despite which he openly and notoriously:

  i.  Persisted in that offensive conduct to the knowledge of the Authority's managerial staff both at the Tappan Zee Bridge and in Albany,

  ii.  Took retaliatory action against Plaintiff by *inter alia*, falsely accusing her of wrongdoing on the job as a result of which she received unjustified, negative performance evaluations.

12. Under the circumstances Plaintiff in detail complained about Spagnola's unwanted sexually hostile conduct to Defendants Eschrich, Scarpulla, and Iuele: a) each one of whom although empowered to take remedial action, took no remedial action to eliminate Plaintiff's hostile work environment; and b) each one of whom affirmatively encouraged/condoned Spagnola's sexual harassment of and retaliation against Plaintiff as a result of which that open and notorious harassment and retaliation continued unabated.

13. As a result Plaintiff filed a complaint with Rosales, reporting the on-going, repeated, sexually harassing conduct as engaged in by Spagnola and encourages/condoned by Eschrich, Scarpula and Iuele.

14. Rosales with the objective of insulating the Authority from suit and stifling Plaintiff's in-house complaint, and with the knowledge and approval of other Thruway administrators with final discretionary authority to administratively finally resolve

complaints of sexual harassment in the workplace, purported to investigate Plaintiff's

allegations. Despite overwhelming eye-witness testimony corroborating Plaintiff's

complaint, Rosales deliberately and falsely concluded that her claims were unfounded.

As a result, although Spagnola's direct supervisory relationship to Plaintiff ceased, his

sexually offensive and physically threatening conduct continued through the Summer of

2005.

15. As a proximate result of Defendants' pervasive and systemic gender

discriminatory conduct and retaliation, Plaintiff has been: caused emotional and anxiety

related difficulties requiring long-term medical treatment; caused financial damages;

publicly humiliated; publicly degraded; publicly embarrassed; publicly held up to

ridicule; publicly shamed; denied the benefits of a workplace free from gender

discrimination and/or retaliation for opposing same; denied Equal Protection by reason of

her gender; suffered repeated violations of her rights as guaranteed by state and federal

law, and otherwise been rendered sick and sore.


### AS AND FOR A FIRST CLAIM
### AGAINST THE AUTHORITY

16. Repeats and realleges as if fully set forth the allegations of fact contained in

paragraphs "1" to "15", inclusive.

17. Under the premises Defendant violated Plaintiff's rights as guaranteed her by

reason of Title VII, 42 U.S.C. §2000e *et. seq.*

## AS AND FOR A SECOND CLAIM
## AGAINST DEFENDANTS SPAGNOLA,
## ROSALES, ESCHRICH, SCARPULLA
## AND IUELE

18. Repeats and realleges as if fully set forth the allegations of fact contained in paragraphs "1" to "15", inclusive.

19. Under the premises Defendants violated Plaintiff's right to Equal Protection as guaranteed her by reason of the Fourteenth Amendment to the United States Constitution, 42 U.S.C. §1983.

## AS AND FOR A THIRD CLAIM
## AGAINST THE AUTHORITY
## AND SPAGNOLA

20. Repeats and realleges as if fully set forth the allegations of fact contained in paragraphs "1" to "15", inclusive.

21. Under the premises Defendant Authority's conduct as Plaintiff's employer and the conduct of Defendants Spagnola as an aider and abettor, violated Plaintiff's rights as guaranteed her by reason of New York State Executive Law §296 *et. seq.*

WHEREFORE judgment is respectfully demanded:

a. On the First Claim: awarding such compensatory and punitive damages as the jury may impose along with costs, and reasonable attorney's fees,

b. On the Second Claim, awarding such compensatory and punitive damages as the jury may impose, along with costs, and reasonable attorney's fees,

c. On the Third Claim, awarding such compensatory damages as the jury may determine, and,

7

d. Granting such other and further relief as to the Court seems just and

proper.

Dated: White Plains, N.Y.
       December 19, 2005

                     LOVETT & GOULD, LLP
                     By:_____
                         Jonathan Lovett (4854)
                     Attorneys for Plaintiff
                     222 Bloomingdale Road
                     White Plains, N.Y. 10605
                     914-428-8401